IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 05-CR-00507-WDM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JOHN MARQUEZ,
    Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States of America (the government), by and through, Joe Allen, Assistant United States Attorney for the District of Colorado, and the defendant, JOHN MARQUEZ, personally and by counsel, Scott Jurdem, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I. PLEA AGREEMENT

1. The Defendant agrees to plead guilty to Count One of the Information which charges the offense of using a communication facility in the commission of a drug trafficking offense (*i.e.*, conspiracy to possess cocaine base with intent to distribute), in violation of Title 21, United States Code, § 843(b).

2. The Defendant agrees to provide truthful and complete cooperation to the Government. Defendant's cooperation shall include providing full debriefings as requested to the U.S. Attorney, and to federal, state, and local law enforcement agencies. Defendant will provide truthful testimony


COURT EXHIBIT 1

at all proceedings, criminal, civil, or administrative, as requested by the U.S. Attorney, or the prosecuting authorities of any state. Such testimony may include, but is not limited to, grand jury proceedings, trials, and pretrial and post-trial proceedings. Defendant agrees to be available for interviews in preparation of all testimony. The Defendant agrees that he will at all times give complete, truthful and accurate information and testimony, and that he will fully and truthfully disclose all information with respect to his own activities and the activities of others concerning all matters about which the government inquires. Defendant understands that this obligation to provide cooperation continues after sentencing and that failure to follow through constitutes a breach of this agreement.

3. The Government agrees that the information and testimony the Defendant provides pursuant to this agreement will not be used, either directly or indirectly, in any other criminal case except prosecutions for perjury or making a false statement, and/or for impeachment purposes. Moreover, pursuant to United States Sentencing Guidelines ("USSG") §1B1.8, the information the Defendant provides pursuant to this agreement will not be used against him at sentencing in this proceeding. Information and testimony relating to involvement in crimes of violence, if any, are excluded from this agreement. "Crimes of violence," as used herein, refers to the traditional, common-law meaning of the term. Moreover, the restrictions on the use of information contained herein do not apply to information: (1) previously known to law enforcement agencies; (2) revealed to law enforcement agencies by, or discoverable through, an independent source.

4. Provided the Defendant completely fulfills his agreement to cooperate as detailed herein, and in so doing substantially assists the United States in the investigation and prosecution of others, the Government agrees that it will not file additional criminal charges against the defendant with

2

respect to the conduct related to and underlying the count of conviction, use of a communication device in the commission of a drug trafficking offense. More specifically, the government agrees not to charge defendant with the federal criminal offenses of (a) conspiracy to possess cocaine and cocaine base with intent to distribute during the period January 2005 through August 2005 in violation of Title 21, U.S.C., §846; or (b) any substantive act of possessing or distributing cocaine or cocaine base in violation of Title 21, U.S.C., §841(a)(1), in the period January 2005 through August 2005, provided said substantive offense is known to the government on the date of this agreement. It is exclusively within the U.S. Attorney's discretion to determine whether defendant has provided substantial assistance in the investigation or prosecution of others.

5. The Defendant agrees that if he intentionally lies to the Government in the course of his cooperation, or otherwise attempts to mislead the Government and/or law enforcement agencies through the omission of material facts or other means, or if he intentionally does not complete his cooperation or otherwise fails to fulfill the terms of this agreement, then the provisions of paragraphs 3 and 4 of this agreement shall be void with the result that: (a) any information and testimony the Defendant will have provided in connection in this case may be used in any prosecution against him, and any plea entered pursuant to this agreement may be set aside.

6. If at any time the Defendant attempts to withdraw the guilty plea he enters pursuant to this agreement; attacks the validity of the conviction on any count; or fails to comply with the terms of the agreement, the U.S. Attorney is released from its promises under this agreement and, in particular, may prosecute defendant on any charge that it agreed to dismiss or not to bring.

7. The parties stipulate and agree that a sentence of not more than forty-eight (48) months imprisonment is reasonable, and an appropriate disposition of the case.

3

8. The parties understand that in determining the sentence, the Court is required to consider the applicable Sentencing Guideline range, but that the Sentencing Guidelines are advisory only. Defendant understands that, under the Sentencing Reform Act, the Court is required to consider all of the factors enumerated in 18 U.S.C. § 3553(a), in addition to the Sentencing Guideline range, in determining an appropriate sentence.

9. The parties have entered this agreement pursuant to Rule 11(c)(1) (A) and (B) of the Federal Rules of Criminal Procedure. The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties. (USSG §6B1.4(d)) The Court is free, pursuant to USSG §§6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. (USSG §6B1.4 Comm.; §1B1.4)

## II. STATUTORY PENALTIES

10. The maximum statutory penalty for a violation of 21 U.S.C. § 843(b) is a term of imprisonment of up to four years imprisonment; a fine not to exceed $250,000.00, or both; a term of up to one (1) 1 year supervised release; and a mandatory $100.00 special assessment fee.

11. The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. Because the Defendant is not a citizen of the United States, the conviction may also cause the Defendant to be deported or confined indefinitely if there is no country to which the Defendant may be deported.

12. A violation of the conditions of probation or supervised release may result in a separate prison sentence.

4

### III. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

13. The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

14. Pertinent facts are set out below in order to provide a factual basis of the plea and to provide facts which the parties believe are relevant, pursuant to USSG §1B1.3, for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. (§6B1.4(b))

15. The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation (§1B1.3) or to sentencing in general (§1B1.4). In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." (§6B1.4 Comm.)

16. The parties agree that the government's evidence would show that the date on which conduct relevant to the offense (§1B1.3) began is on or about June 29, 2005.

17. The parties agree that the government's evidence would be:

*In June 2005, as part of an ongoing investigation of the distribution of cocaine and cocaine base in the Denver metropolitan area, agents of the Metro Gang Task Force ("MGTF") obtained authorization from the United States District Court for the District of Colorado to wiretap a telephone located in the District of Colorado and being utilized by Victor Valdez, a subject of the investigation. The investigation had established that Victor Valdez and his spouse, Vanessa*

5

Gallegos, were distributing cocaine and cocaine base to numerous individuals and utilizing the target cellular telephone to facilitate the drug distribution activity.

Between June 17 and August 10, 2005, the wiretap intercepted several telephone calls between Victor Valdez, Vanessa Gallegos and the Defendant, JOHN MARQUEZ. During the course of these calls, all of which occurred in the District of Colorado, Defendant MARQUEZ arranged to purchase from Victor Valdez and Vanessa Gallegos quantities of cocaine and cocaine base. Specifically on June 17, 2005, at approximately 6:06 p.m., Defendant Marquez called the cellular telephone of Victor Valdez, and spoke with Vanessa Gallegos, who answered the telephone. During the conversation, Defendant Marquez told Vanessa Gallegos that he had been waiting and asked when "you guys" would arrive. Vanessa Gallegos responded that the "dinner" [i.e., crack cocaine] was ready, asked Defendant "what did you want, half?" [i.e., one-half ounce of cocaine base], and then told Defendant Marquez would be "first on the list." In two subsequent intercepted conversations the Defendant and Vanessa Gallegos made arrangements to meet at a location on Broadway Street in Denver, Colorado to complete the sale and delivery of the one-half ounce of cocaine base. At approximately 6:40 p.m. on June 17, 2005, officers of the MGTF observed Defendant Marquez at the location he and Vanessa Gallegos had agreed to conduct the cocaine sale. Defendant approached a vehicle at the location, had a brief discussion with the passenger of the vehicle and then handed something to the vehicle passenger. The vehicle passenger then handed the Defendant a clear plastic bag which appeared to contain an off-white substance which agents concluded was the one-half ounce of cocaine base the Defendant had ordered.

On August 10, 2005, the wiretap intercepted an incoming call from the Defendant to Victor Valdez. During this call, Valdez asked the Defendant, "what do you need?" The Defendant

*responded "half and half, bro." Later in the conversation, the Defendant further told Valdez he wanted, "a whole one, half and half, bro; half hard, half soft." [i.e., one once of cocaine divided as one-half ounce of powdered cocaine and one-half ounce of cocaine base.]*

*Defendant utilized communication devices, that is cellular telephones, to participate in all of the above-described intercepted communications. Defendant's purpose in participating in each of these communications was to facilitate an agreement among himself, Victor Valdez, Vanessa Gallegos and others to possess and distribute cocaine and cocaine base.*

## IV. SENTENCING COMPUTATION

18. The parties understand that in sentencing the Defendant, the Court will consider the advisory United States Sentencing Guidelines, issued pursuant to 28 U.S.C. § 994(a), as well as the factors set forth in Title 18, United States Code, §3553(e).

19. The parties stipulate to the following factors under the United States Sentencing Guidelines:

A. The Defendant is accountable for a drug quantity of between twenty (20) and thirty-five (35) grams of cocaine base. Consequently, the applicable base guideline is §2D1.1(c)(6), and the base offense level is 28.

B. No specific offense characteristics apply.

C. No role-in-the offense, obstruction, or victim-related adjustments apply.

7

D. The defendant should receive a three (3) point downward adjustment for acceptance of responsibility as he has complied with the requirements of USSG §3E1.1(b). The resulting offense level would therefore be 25.

23. The parties understand that the defendant's criminal history computation is tentative. Defendant's actual criminal history category will be determined by the Court. Based upon the Defendant's Computerized Criminal History ("CCH") the parties believe his criminal history includes the following convictions:

A. On September 8, 2000, the Defendant pled guilty in Arapaho County Colorado in Case Number 98CR1221 to the felony offenses of obtaining a controlled substance, for which he received a deferred sentence of two (2) years conditioned on drug and alcohol treatment, and the misdemeanor offense of false reporting, for which he received a sentence of two years probation. On February 21, 2002, the defendant plead guilty to a probation violation on Case Number 98CR1221 and received a sentence of sixty (60) days jail. On March 13, 2004, the defendant plead guilty to a probation violation on Case Number 98CR1221 and received a sentence of ninety (90) days jail and three (3) years intense supervision probation. On September 14, 2004, the defendant plead guilty to a probation violation on Case Number 98CR1221 and received a sentence of two (2) years incarceration in a community corrections facility. Pursuant to USSG §4A2.1(k), the original sentences on Arapahoe County Case Number 98CR1221(c)(1) and the sentences for each probation violation are aggregated, resulting in a total sentence of incarceration of more than thirteen (13) months. Consequently, pursuant to USSG §4A1.1(a) +3 criminal history points.

B.  On September 8, 2000, the Defendant pled guilty in Arapaho County Colorado in Case Number 99CR1218 to the misdemeanor offense of false reporting, for which he received a sentence of two years probation. On February 21, 2002, the defendant plead guilty to a probation violation on Case Number 99R1218 and received a sentence of one (1) day unsupervised probation. Pursuant to USSG §4A2.1(k), the original sentence on Arapahoe County Case Number 99CR1218 and the sentence for the probation violation are aggregated, resulting in a total sentence of incarceration of less than sixty (60) days. Consequently, pursuant to USSG §4A1.1(c) +1 criminal history point.

D   The Defendant committed the instant offense while on failure to comply status for a prior sentence in Arapahoe County Case Number 98CR1221 (failure to serve community corrections sentence). Consequently, pursuant to USSG §4A1.1(d) +2 criminal history points.

Based on the above information, if the Defendant has no other prior convictions, the Defendant's criminal history category would be Category III.

20. Assuming the only the known criminal history facts set above, the career offender/criminal livelihood/armed career criminal adjustments of the guidelines *would not* apply.

21. The guideline range resulting from the estimated offense level set forth above is: 70 to 87 months, with a restricted **statutory maximum of 48 months**.

22. Pursuant to guideline USSG §5E1.2, assuming the estimated offense level set forth above, the guideline fine range for this offense would be **$10,000 to $100,000**.

9

23. Pursuant to guideline §5D1.2, if the Court imposes the term of supervised release, that term shall be not more than **one (1) year**.

### V. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

24. The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

25. This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 2-9-06

JOHN MARQUEZ
Defendant

Date: 2-8-06

Scott Jurdham
Attorney for Defendant

Date: 2/10/06

Joe Allen
Assistant U.S. Attorney